### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| UBS FINANCIAL SERVICES INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PHIL G. FIORE JR, JEFFREY H. | ) |
| FARRAR, LOUIS GLORIA, and | ) |
| THOMAS M. GAHAN, | ) |
| | ) |
| Defendants. | ) |

### AFFIDAVIT OF FRANK MINERVA

I, Frank Minerva, under penalties of perjury provided by law, state that I am over the age of 21 years and that if called upon to testify under oath I could and would testify competently to the following:

1.      I am currently employed as Branch Manager of the Stamford, Connecticut branch office (the "Stamford office") and Market Head for the Fairfield Country Market of Plaintiff UBS Financial Services Inc. ("UBS").

2.      I have been Stamford Branch Manager since approximately May 2013.  I have been Market Head since approximately August 2016.  Before I became Market Head, I was complex manager for the Stamford complex from approximately May 2013 - August 2016.

3.      As the Market Head and Stamford Branch Manager, I have responsibilities with respect to supervision of employees, office operations, compliance, implementation, and execution of firm policy and training.

4.      As the Market Head, my duties include performing delegated supervisory functions for the complex/branch and ensuring that the Fairfield County Market is in compliance with firm risk management guidelines and polices.

5.      I have familiarity with each UBS financial advisor who has worked in my office during my tenure with UBS, and I am generally aware of the customer accounts that each such financial advisor services.

6.      In my capacity as Market Head and Stamford Branch Manager, I am familiar with the Defendants in this case, Phil G. Fiore Jr. ("Fiore"), Jeffrey H. Farrar ("Farrar"), Louis Gloria ("Gloria"), and Thomas M. Gahan ("Gahan") (collectively "Defendants"), who were all previously employed as financial advisors in the Stamford office.

7.      I submit this affidavit in support of UBS's Motion for Injunctive and Other Relief.

### Defendants' Former UBS Employment

8.      I am personally familiar with the facts and circumstances of Defendants' employment with UBS.

#### *Fiore's Former UBS Employment and Agreements*

9.      UBS business records reflect that Fiore began his employment with UBS on April 24, 2009, and worked as a financial advisor in the Stamford office.

10.     As a financial advisor, Fiore had access to confidential UBS information relating to, among other things, client names and contact information, client investment

information and   account performance reporting, client financial data, and client estate planning information, to name a few.

11.     UBS business records show that, in connection with his employment, on or about April 24, 2009, Fiore signed a Transition Agreement with UBS in which he agreed to certain restrictive covenants, as follows:

Non-Solicitation of Clients: In the event Employee's employment with UBSFS is terminated for any reason whatsoever, whether voluntarily or involuntarily, Employee agrees, for a period of one year from the date of termination or until such time that all amounts owed by the Employee to UBSFS and all related entities have been fully repaid, whichever is earlier, to not solicit, directly or indirectly, any of the clients who maintain accounts at UBSFS ("Clients of UBSFS") whom Employee serviced during his/her employment at UBSFS or other Clients of UBSFS whose names became known to Employee while in the employ of UBSFS.

"Solicit" as set forth in this paragraph means that the Employee will not initiate, whether directly or indirectly, any contact or communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting a client or that may have the effect of inviting, encouraging or requesting a client:

   (a)   to transfer his/her UBSFS account(s) to the Employee or his/her new employer; or

   (b)   to open a new account with Employee or his/her new employer; or

   (c)   to otherwise discontinue his/her existing relationship with UBSFS.

Confidentiality of Client Information: All information concerning Clients of UBSFS, former clients of UBSFS and prospective clients of UBSFS must be treated as confidential and must not be disclosed to anyone outside of UBSFS unless the disclosure is expressly authorized by the client, required by law, rule, regulation or legal process. Employee further expressly agrees that, in the event Employee's employment is terminated for any reason whatsoever, whether voluntarily or involuntarily, Employee may not take any records or information referring or relating to Clients of UBSFS, former clients of UBSFS and prospective clients of UBSFS, whether originals or copies, in hard copy or computerized form.

UBS business records also show that Fiore executed additional Transition Agreements with UBS on or about April 24, 2011 and April 24, 2012, as well as Deferred Cash Award Agreements on or about April 24, 2014, February 19, 2015, and February 22, 2016, all of which contained similar restrictive covenants. Copies of the Transition Agreements and Deferred Cash Award Agreements executed by Fiore are attached hereto as the Complaint as Exhibits A - F.

12.     During his UBS employment, Fiore was a member of a financial advisor and institutional consulting team known as the FDG Group. Other members of the team included defendants Farrar, Gloria and Gahan, as well as Stephen DesRochers ("DesRochers") and Dean Gaugler ("Gaugler"), among others. My understanding is that Fiore, DesRochers and Gaugler were the founding members of the FDG Group.

13.     In 2016, the FDG Group serviced client accounts with approximately $8 billion in assets under management generating approximately $6 million in annual gross revenue.

14.     The FDG Group was supported by a number of non-producing staff employees who played important roles in servicing the UBS clients covered by the team.

15.     In February 2016, Fiore executed a Financial Advisor Team Agreement with the other financial advisors in the FDG Group (the "February 2016 Team Agreement," attached to the Complaint as Exhibit G). In that Agreement, Fiore expressly agreed that, upon the termination of his employment with UBS, he would be prohibited from soliciting any clients of UBS serviced by the FDG Group:

> Upon termination of employment of any Team Member or former Team Member, the departing Team Member or former Team Member agrees that,

in addition to any other non-solicitation obligations he/she may have in any other agreement with UBS or its predecessors, including but not limited to those contained in:

...

- Employee Transition [Agreement]

...

he/she will not solicit, for a period of one year from the date of termination of the departing Team Member's employment, any clients of [UBS] serviced by the Team.

Compl. Ex. G, at p. 5, ¶11(A).

16.    The February 2016 Team Agreement further provided that the non-solicit in that agreement would not "apply to client accounts the departing Team Member introduced to the Team either at its inception or during its existence" unless the such solicitation was "prohibited by a non-solicitation provision in another agreement...." Compl. Ex. G, at p. 5, ¶11(B).

17.    The February 2016 Team Agreement also requires that Fiore adhere to confidentiality and non-disclosure provisions concerning UBS's business and its customers.  Specifically, the February 2016 Team Agreement provides:

**Confidential Information.**  Each Team Member hereby agrees not to disclose to any person any Confidential Information relating to [UBS] except in the course of carrying out his or her duties for [UBS] or as required by law or governmental agency with jurisdiction. For purposes of this paragraph, "Confidential Information" means any nonpublic information concerning [UBS]'s financial data, strategic business plans, product development, customer lists, customer financial information, marketing plans, and any other proprietary information; except for specific items that have become publicly available other than through a breach by you of this Paragraph 20 or any other confidentiality agreement....

Compl. Ex. G, at p. 7, ¶20.

18.    As a financial advisor, Fiore was provided, and was required to read and

comply, with all firm policies and procedures, including the UBS Financial Services, Inc.

Code of Conduct and Investment Advisor Code of Ethics ("the Code of Conduct").   A

financial advisor's agreement to comply with UBS's policies and procedures, including the

Code of Conduct and other policies designed to ensure the confidentiality and security of

UBS's confidential client and business information, is a condition of his or her continued

employment with UBS. The Code of Conduct section entitled "Privacy/Confidential

Client, Employee and Firm Information" states, in relevant part, as follows:

A.   Introduction

It is essential for all employees to maintain and preserve the confidentiality of the Firm's and its clients' information. This obligation continues even after an employee leaves the Firm. The policies and procedures set forth below set a minimum standard; your business unit or position may require additional, and in some instances more restrictive, procedures.

Firm or client information generally may only be used for the specific purpose for which it was created or obtained; any other use without the permission of the source may be a misuse. Your ability to share Firm or client information within and outside the Firm is governed by both Firm and departmental policies and procedures, and by Federal and State regulations.  Generally, you may only disclose such information with the Firm to employees who have a need to know it to carry out the Firm's business and sharing with affiliates or unaffiliated third parties is strictly limited. Under no circumstances may you disclose Firm or client information to anyone should it appear likely he or she would misuse the information.

Confidential information may be contained in Firm documents, computer programs, databases, client lists, trading strategies and analytic models. You should assume that all nonpublic or unpublished information is confidential.

Upon the termination of your [UBS] employment, you may not retain or take with you any Firm property or assets, including any writings, files, documents or other records that contain client information, including information maintained electronically, such as disks, e-mail, computer databases, video, microfiche and tape recordings, or any other Firm confidential information.

Each Firm employee acknowledges that if he or she violates any aspect of this section, the Firm will suffer immediate and irreparable harm for which

monetary damages would provide only partial inadequate relief. Each Firm employee agrees that he or she may be subject to an injunction or other equitable remedy in the event that he or she violates the provisions of the UBS Financial Services Inc. Code of Conduct pertaining to confidential Firm and client information.

B.   Client Information and Privacy

Our clients, both individual and institutional, entrust us not only with their financial assets but also with confidential information. It is essential that the Firm's clients know that personal information they entrust to us will be handled with integrity and discretion. Accordingly, all information concerning Firm clients, former clients and prospective clients must be treated as confidential and must not be disclosed to anyone outside the Firm unless the disclosure is expressly authorized by the client; required by law, rule, regulation or legal process; or specifically allowed by the Firm's privacy policies...

19.   In connection with his employment at UBS, Fiore agreed to be bound by the Code of Conduct, agreed to maintain the confidentiality of UBS's Confidential Information and acknowledged that he would not be permitted to retain, disclose or utilize any of UBS's Confidential Information after the termination of his UBS employment.

20.   On November 30, 2016, Fiore was terminated from UBS.

### Farrar's, Gloria's, and Gahan's Former UBS Employment and Agreements

21.   Farrar, Gloria, and Gahan also worked as financial advisors in the Stamford office. UBS business records show that Gahan became employed with UBS on June 21, 2007, whereas Farrar and Gloria became employed with UBS on April 24, 2009.

22.   During their UBS employment, Farrar, Gloria, and Gahan worked as members of the FDG Group.

23.   While Farrar, Gloria, and Gahan were parties to the February 2016 Team Agreement, that agreement was superseded by their execution of another Financial Advisor

Team Agreement in December 2016 (the "December 2016 Team Agreement", attached to the Complaint as Exhibit H) executed after Fiore's termination.

24.     The December 2016 Team Agreement governed the pool of accounts serviced by the remaining members of the FDG Group, namely DesRochers, Gaugler, Farrar, Gloria, and Gahan.

25.     In the December 2016 Team Agreement, Farrar, Gloria, and Gahan expressly agreed that, upon the termination of their employment with UBS, they would be prohibited from soliciting any clients of UBS serviced by the FDG Group, unless they introduced the client to the team:

> If the employment of any Team Member (current or former) terminates for any reason, that Team Member will not, for a period of one year from the employment termination date, solicit any clients that were serviced by the Team. **This provision does not apply to client accounts the departing Team Member introduced to the Team, either at its inception or during its existence.** Nothing in this Non-Solicitation provision limits any rights UBS or any Team Member may have under the Protocol for Broker Recruiting ("Protocol").

Compl. Ex. H, at p. 2, ¶5 (emphasis in original).

26.     Throughout their UBS employment, Farrar, Gloria, and Gahan also repeatedly acknowledged the confidentiality of information concerning UBS's clients. Each advisor was provided, and was required to read and comply with all firm policies and procedures, including UBS's Code of Conduct. Similar to Fiore, Farrar, Gloria, and Gahan's continued employment by UBS was conditioned upon, *inter alia,* their agreement to comply with UBS's policies and procedures, including the Code of Conduct and other policies designed to ensure the confidentiality and security of UBS's confidential client and business information.

27.     In connection with their employment at UBS, Farrar, Gloria, and Gahan agreed to be bound by the Code of Conduct, agreed to maintain the confidentiality of UBS's Confidential Information and acknowledged that they would not be permitted to retain, disclose or utilize any of UBS's Confidential Information after the termination of their UBS employment.

### Further Efforts Taken by UBS to Safeguard the
### Confidentiality of UBS Records and Client Information

28.     In addition to signing the Agreements, Defendants repeatedly acknowledged the confidentiality of information concerning UBS's clients. Consistent with UBS's normal procedures, Defendants were required to annually certify to UBS that they fully complied with and adhered to firm policies, including those contained in the Firm's Code of Conduct and Business Ethics and all other applicable firm policy manuals, Compliance Bulletins, Guidelines, and Directives; as well as the laws, rules, and regulations that govern or are otherwise applicable to the financial services industry.

29.     Each UBS financial advisor's access to information concerning UBS clients is limited to those clients whose accounts are serviced by that financial advisor. In order to gain access to client information through UBS's computer system, each financial advisor must use his or her confidential password. The system is designed so that one financial advisor cannot gain access to information concerning clients serviced by other financial advisors without having access to their computer password (unless special clearance has been given, and the necessary arrangements are made).

30.     UBS management personally reviews outgoing correspondence from the employees in the office in order to determine (among other things) that no confidential or proprietary information is improperly disclosed outside of UBS.

31.     UBS's customer base is the lifeblood of its business. UBS spends millions of dollars each year on national and local advertising.  UBS also spends millions of dollars more each year for:  (a) sales support staff; (b) clearing services, operations personnel, systems, and support; (c) management and compliance supervision; (d) salaries; (e) annual registration fees; (f) computer services and equipment, phone systems, and mail handling facilities; (g) securities research and the publication of literature concerning securities and investments; (h) investment seminars and promotional events; (i) subscriptions to trade, professional and news publications; and (j) the retention of experts in tax, employee, and health benefits, insurance, real estate, underwriting, and numerous other sub-specialties. UBS incurs these many and substantial expenditures for the specific purpose of attracting and maintaining a loyal client base, and in order to establish and maintain customer goodwill.

### Defendants' Wrongful Conduct

32.     As noted above, Fiore was terminated from UBS on November 30, 2016.

33.     On June 2, 2017, Farrar, Gloria, and Gahan resigned without prior notice. They all tendered their resignation to me. Copies of the resignation letters are attached as Exhibit 1.

34.     The resignation letters state that they are joining Procyon Institutional Partners, LLC and Procyon Private Wealth Partners, LLC (collectively, "Procyon").

35.     My understanding is that Procyon is a firm that Mr. Fiore formed, or was instrumental in forming, after his termination from UBS. The Form ADV for Procyon, a registered investment adviser firm, indicates that Mr. Fiore is Procyon's CEO and Executive Managing Director.

36.     Along with their resignation letters, Farrar, Gloria, and Gahan tendered to me lists of customer accounts that they planned to solicit in accordance with the Protocol for Broker Recruiting (the "Protocol").

37.     One list was comprised of various institutional consulting clients serviced by the FDG Group. The other list was comprised of various private wealth clients serviced by the FDG Group.

38.     The lists included client names, addresses, telephone numbers, email addresses, and account titles. This information is confidential and proprietary UBS information.

39.     My understanding of the December 2016 Team Agreement is that Farrar, Gloria and Gahan would be allowed upon the termination of their employment to solicit clients, in any, that they introduced to the FDG Group and that they would not be permitted to solicit any other clients of the FDG Group.

40.     After Farrar, Gloria and Gahan resigned, I asked certain of the remaining members of the FDG Group to review the client lists submitted by Farrar, Gloria and Gahan to determine whether the lists contained only clients introduced to the team by Farrar, Gloria and Gahan. It was reported to me that the list contained numerous clients not introduced to the team by Farrar, Gloria and Gahan.

41.     The same day that Farrar, Gloria and Gahan resigned, UBS clients began reporting that they had received a blast email that contained a message from Fiore, Farrar, Gloria and Gahan about their new firm, Procyon. *See* the June 2, 2017 email attached to the Complaint as Exhibit J.

42.     The June 2 email, which bears the subject line "Exciting News, The Team of FDG Group is now Procyon Partners," states "We're writing to share the exciting news about the launch of our new firm, Procyon Partners." The email then states "[o]ur team will be reaching out to you in the coming days to discuss any questions you may have about this change, including the details about the smooth transition of your accounts to your new custodian partner...."

43.     Consistent with the June 2 email's statement that "our team will be reaching out to you in the coming days," UBS clients serviced by the FDG Group have reported being contacted by Defendants about moving their UBS accounts to Procyon.

44.     I understand that counsel for Defendants has made a specific representation that Fiore is not soliciting clients and that he has abided by, and will continue to abide by, the non-solicitation restrictions in his various UBS agreements.

45.     Notwithstanding counsel's representation, I believe Fiore is soliciting and continues to solicit clients.

    a.     Attached as Exhibit 2 is a chain of emails sent to a UBS employee that includes an email from Fiore, dated June 4, 2017, to a paralegal at a law firm that does work for one of the FDG Group's clients that states as follows: "As you can see I have officially set up our own independent RIA

– called Procyon Partners. The team resigned on Friday from UBS and we are open for business! **We have spoken with [client representative] and he would like the [client] to stay under my guidance at our new firm. I have sent him the paperwork to that affect....**" (Emphasis supplied)

b.    Attached as Exhibit 3 is a chain of emails sent to a UBS employee that includes an email from a board member of a UBS client, dated June 5, 2017, that states as follows: "The FDG Group has left UBS which manages the endowment account. I believe we came in through Richard Ball but Jeff Farrar is part of FDG and has left UBS. **I received an email from one of his partners, Phil Fiore.**" (Emphasis supplied)

c.    In addition, the blast email purports to be a message from Fiore (as well as the other defendants), and includes his photograph and signature (along with those of the other defendants).

46.    The June 5 email from the board member of a client also highlights what I believe to be a problematic aspect of Defendants' pitch to clients. The board member states in her email that "The FDG Group has left UBS." This is not accurate, but it is not surprising that is her perception. Defendants' June 2 blast email has as its subject "Exciting News; The Team of FDG Group is Now Procyon Partners." In addition, my review of Defendants' LinkedIn profiles revealed that each of them states in their biography: "Formerly known as the FDG Group, Procyon Partners made their move to independence in June of 2017."

47.     This is not true.  The entire FDG Group did not leave UBS to become Procyon. DesRochers and Gaugler remain employed at UBS and continue to work as the FDG Group. Additional support staff members for the FDG Group also remain employed at UBS.

48.     Nonetheless, UBS clients have reported to us that they have been confused and misled to believe that the entire FDG Group left UBS to join Procyon. UBS clients have also expressed concern over who is managing and servicing their assets at UBS due to their mistaken belief that the entire FDG Group has left UBS.

### Defendants' Wrongful Conduct Prior to June 2, 2017

49.     There was approximately a six-month period between when Fiore was terminated and when Farrar, Gloria and Gahan resigned to join him at Procyon.

50.     I believe that Fiore was violating his non-solicitation obligations during this interim period, having preliminary discussions with clients so that they would be ready to move as soon as the others resigned.  I also believe it is likely that Farrar, Gloria and Gahan were aware of Fiore's activities and coordinated with him with respect to such preliminary discussions with clients and with regard to setting up Procyon.

51.     After the resignation of Farrar, Gloria and Gahan, I obtained a copy of the minutes of the March 20, 2017 semi-annual meeting of one of the FDG Group's foundation clients.  The minutes (attached as Exhibit A to the Affidavit of Lisa Giordano) reflect that Fiore had been in contact with them to advise them of his departure from UBS and plan to form a new firm:

- "Phil Fiore was absent as a financial advisor, having departed from UBS and is in the process of opening a new firm."

- "[T]he meeting was adjourned after the Chairman remarked that he would be in touch with the Secretary to establish a date for the October meeting when he had a chance to talk further with Mr. Fiore since the spirit of the Board was to continue with Mr. Fiore no matter where he goes to conduct his business."

52.     In addition, the minutes also reflect that the Board had received "a package that had been provided by Phil Fiore, through UBS." The minutes then proceed to recount the "gist of the report from Mr. Fiore."

53.     As recounted by Giordano in her affidavit, I understand that defendant Farrar was provided with a copy of the minutes after they were received by Giordano in March 2017. Although the minutes reflect that Fiore was in contact with the client, had advised them of his plan to form a new firm and had secured the client's agreement to follow him to the new firm, Farrar did not inform me of any this important information.

54.     I believe it likely that Fiore solicited other FDG Group clients in the interval between his termination and when the other defendants resigned. One of the team's largest consulting clients, a large municipality in New Jersey, informed UBS of the decision to move its business to Procyon on June 6, 2017, only four days after Farrar, Gloria and Gahan resigned. I find it hard to believe that a large municipality could make such a decision so quickly and thus believe it likely that Fiore solicited them during the months between when he was terminated and when the other defendants resigned.

55.     I think it is clear that Farrar, Gloria, and Gahan had been planning their departure from UBS for some time prior to their resignation on June 2, 2017. For instance, I have learned that on June 1, 2017, the day before their mass departure from UBS, Farrar, Gloria, and Gahan informed the FDG Group support staff that they would be having a team bowling event. However, rather than taking the staff out bowling, Farrar, Gloria, and Gahan instead brought them to Procyon's office and solicited them to join the advisors at their new employer.

56.     Along with Farrar, Gloria, and Gahan's resignation from UBS on June 2, 2017, FDG Group support staff Christopher Foster, Robert Ossers, and Richard Appaluccio also resigned from UBS to join Procyon. Each of these support staff members resigned to me.

57.     Based on what information we have been able to collect to date, I am informed and believe that the Defendants have contacted and solicited, and will continue to contact and solicit, FDG Group clients. This includes those clients that Farrar, Gloria, and Gahan did not introduce to the team.

58.     Despite the express agreements that they signed, and the UBS policies set forth above (and which Defendants acknowledged), I am informed and believe that Farrar, Gloria, and Gahan have retained and have disclosed confidential information relating to the FDG Group clients they did not introduce to UBS to Fiore and/or Procyon and have used such information to solicit business from those clients for the purpose of soliciting them to transfer their accounts from UBS to Procyon.

I declare under the penalty of perjury under the laws of the State of Connecticut that the foregoing is true and correct. Executed on June *15*, 2017 in Stamford, Connecticut.

Frank Minerva

# EXHIBIT 1

Jeff Farrar
90 Scarlet Oak Drive
Wilton CT 06897

VIA HAND DELIVERY

Frank Minerva                                           6/1        , 2017
UBS Financial Services
750 Washington Blvd
Stamford, CT 06901

RE:  Resignation
Dear Frank:

    Please accept this as my official resignation from UBS Financial Services effective immediately.

    I have decided to join Procyon Institutional Partners, LLC and Procyon Private Wealth Partners, LLC. Both of these entities are members of the Protocol for Broker Recruiting which governs the transition of Registered Representatives between member firms. In accordance with the Protocol, I am providing you with two lists – one list of those clients I intend to have join Procyon Institutional Partners, LLC and one list of those I intend to have join Procyon Private Wealth Partners, LLC. Additionally, I am not taking any information other than the information that is expressly authorized under the Protocol. The required lists of clients is being provided along with my resignation letter.

    Although I do not anticipate any difficulties, if there are any legal matters that require my attention, you are directed to contact my attorney directly using the following information:

Corey S. Kupfer, Esq.
Kupfer & Associates, PLLC
Tel.:  (646) 751-8016

    Upon filing a Form U5 evidencing my voluntary termination, please forward a copy to my address listed above. I look forward to an amicable separation and an ongoing professional relationship with UBS Financial Services.

Yours truly,

Jeff Farrar

Louis Gloria Jr
760 Dennis Drive
Orange, CT 06477

<u>VIA HAND DELIVERY</u>

Frank Minerva                                                    6/1/, 2017
UBS Financial Services
750 Washington Blvd
Stamford, CT 06901

RE: Resignation
Dear Frank:

Please accept this as my official resignation from UBS Financial Services effective immediately.

I have decided to join Procyon Institutional Partners, LLC and Procyon Private Wealth Partners, LLC. Both of these entities are members of the Protocol for Broker Recruiting which governs the transition of Registered Representatives between member firms. In accordance with the Protocol, I am providing you with two lists – one list of those clients I intend to have join Procyon Institutional Partners, LLC and one list of those I intend to have join Procyon Private Wealth Partners, LLC. Additionally, I am not taking any information other than the information that is expressly authorized under the Protocol. The required lists of clients is being provided along with my resignation letter.

Although I do not anticipate any difficulties, if there are any legal matters that require my attention, you are directed to contact my attorney directly using the following information:

Corey S. Kupfer, Esq.
Kupfer & Associates, PLLC
Tel.: (646) 751-8016

Upon filing a Form U5 evidencing my voluntary termination, please forward a copy to my address listed above. I look forward to an amicable separation and an ongoing professional relationship with UBS Financial Services.

Yours truly,

Louis Gloria Jr

Thomas Gahan
10 Tusa Ct.
Saint James, NY 11780

<u>VIA HAND DELIVERY</u>

Frank Minerva                                    6-1          , 2017
UBS Financial Services
750 Washington Blvd
Stamford, CT 06901

RE:  Resignation
Dear Frank:

     Please accept this as my official resignation from UBS Financial Services effective immediately.

     I have decided to join Procyon Institutional Partners, LLC and Procyon Private Wealth Partners, LLC. Both of these entities are members of the Protocol for Broker Recruiting which governs the transition of Registered Representatives between member firms. In accordance with the Protocol, I am providing you with two lists – one list of those clients I intend to have join Procyon Institutional Partners, LLC and one list of those I intend to have join Procyon Private Wealth Partners, LLC. Additionally, I am not taking any information other than the information that is expressly authorized under the Protocol. The required lists of clients is being provided along with my resignation letter.

     Although I do not anticipate any difficulties, if there are any legal matters that require my attention, you are directed to contact my attorney directly using the following information:

Corey S. Kupfer, Esq.
Kupfer & Associates, PLLC
Tel.: (646) 751-8016

Upon filing a Form U5 evidencing my voluntary termination, please forward a copy to my address listed above. I look forward to an amicable separation and an ongoing professional relationship with UBS Financial Services.

Yours truly,

Thomas Gahan

# EXHIBIT 2

**From:** Phil Fiore [mailto:pfiore@procyonpartners.net]
**Sent:** Monday, June 12, 2017 11:35 AM
**To:** Giordano, Lisa
**Subject:** FW:    REDACTED    Exciting New: THE FDG GROUP IS NOW PROCYON PARTNERS

Lisa,

Can you please handle for K    REDACTED    and confirm with me.

Thank you very much in advance!



Phil Fiore, Jr. CIMA
Chief Executive Officer, Executive Managing Director
Procyon Partners, LLC
1 Corporate Drive. Suite 225  |  Shelton, CT  06484
M: (844) Procyon | D: (475) 232-2700 | F: (475) 232-2739
pfiore@procyonpartners.net  |  www.procyonpartners.net

**From:** K:    REDACTED
**Sent:** Tuesday, June 6, 2017 11:11 AM
**To:** Phil Fiore <pfiore@procyonpartners.net>
**Subject:** RE:    REDACTED    Exciting New: THE FDG GROUP IS NOW PROCYON PARTNERS

Phil,
Once you get the account set up, we will need some money to pay the accountants.  Please find the EFT request attached.

I have mailed out this morning the notice for the Fall meeting on September 18th.

Thank you,

K    REDACTED



Confidential: This message and all contents contain information from the _____ REDACTED _____ that may be privileged, confidential or otherwise protected from disclosure under applicable law. The information is intended to be for the addressee only. If you are not the addressee, or if you have received this message in error, any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this message in error, please notify us immediately by reply email or telephone REDACTED and destroy the original message and all attachments without retaining any copies. Thank you.

>>> Phil Fiore <pfiore@procyonpartners.net> 6/5/2017 9:53 AM >>>

Good Morning K    REDACTED

J    sent me a text yesterday that suggested that the meeting was on September 18th at 10am.

Also, We are going a different direction with Lisa so will update you on another contact soon.

Thank you



Phil Fiore
Chief Executive Officer, Executive Managing Director
Procyon Partners, LLC
1 Corporate Drive. Suite 255 | Shelton, CT 06484
M: (844) Procyon | D: (475) 232-2700 | F: (475) 232-2739
pfiore@procyonpartners.net | www.procyonpartners.net

**From:** K          REDACTED
**Sent:** Monday, June 5, 2017 9:39 AM
**To:** Phil Fiore <pfiore@procyonpartners.net>
**Cc:** Lisa Giordano <lgiordano@procyonpartners.net>
**Subject:** Re:      REDACTED      : Exciting New: THE FDG GROUP IS NOW PROCYON PARTNERS

Thank you Phil, I have updated your contact information accordingly.

Please let me know when a Fall meeting date has been established, so I can notice it accordingly.

Thank you,

K          REDACTED



Confidential: This message and all contents contain information from the                    REDACTED                    that may be privileged, confidential or otherwise protected from disclosure under applicable law. The information is intended to be for the addressee only. If you are not the addressee, or if you have received this message in error, any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this message in error, please notify us immediately by reply email or telephone    REDACTED    and destroy the original message and all attachments without retaining any copies. Thank you.

>>> Phil Fiore <pfiore@procyonpartners.net> 6/4/2017 5:09 PM >>>

Happy Sunday M REDACTED and K; REDACTED ll – Hopefully you are actually reading this on Monday ☺

As you can see I have officially setup our own independent RIA – called Procyon Partners. The team resigned on Friday from UBS and we are open for business!

We have spoken with J| and he would like the        REDACTED        to stay under my guidance at our new firm. I have sent him the paperwork to affect that which we should have back in a couple of days. Until those accounts transfer they will be at UBS, so K REDACTED if you need anything Lisa (who is cc'ed here) is with us at Procyon so please feel free to reach out for either her or I should you need anything.

In the meantime, I've enclosed an electronic copy of our brochure and a client email that we sent out so you can get more familiar with our firm should you choose to.

M REDACTED I will see you at the Fall Foundation meeting, C; REDACTED is getting me the date. I look forward to seeing you then.

Have a great summer and let me know if you need anything!!

Best Regards,

Phil



Phil Fiore
Chief Executive Officer, Executive Managing Director
Procyon Partners, LLC
1 Corporate Drive. Suite 225 | Shelton, CT 06484
M: (844) Procyon | D: (475) 232-2700 | F: (475) 232-2739
pfiore@procyonpartners.net    www.procyonpartners.net

Securities offered through Purshe Kaplan Sterling Investments, Member FINRA SIPC Headquartered at 18 Corporate Woods Blvd., Albany, NY 12211 Purshe Kaplan Sterling Investments and Procyon Private Wealth Partners, LLC are not affiliated companies.

Procyon Private Wealth Partners, LLC and Procyon Institutional Partners, LLC (collectively "Procyon Partners") are registered investment advisors with the U.S. Securities and Exchange Commission ("SEC"). Information in this message is for the intended recipient[s] only. Please visit our website www.procyonpartners.net for important disclosures.
Procyon Private Wealth Partners, LLC and Procyon Institutional Partners, LLC (collectively "Procyon Partners") are registered investment advisors with the U.S. Securities and Exchange Commission ("SEC"). Information in this message is for the intended recipient[s] only. Please visit our website www.procyonpartners.net for important disclosures.

Procyon Private Wealth Partners, LLC and Procyon Institutional Partners, LLC (collectively "Procyon Partners") are registered investment advisors with the U.S. Securities and Exchange Commission ("SEC"). Information in this message is for the intended recipient[s] only. Please visit our website www.procyonpartners.net for important disclosures.

# EXHIBIT 3

# REDACTED

**From:** F_____REDACTED
**Sent:** Thursday, June 08, 2017 9:36 AM
**To:** Ball, Richard
**Cc:** Jeff Farrar (jfarrar@procyonpartners.net)
**Subject:** RE: Endowment account

Richard,

Be aware that there is a lot of concern raised by this. A big package was delivered to Bob for signatures, not followed up call and you are out of town. It seems like a big change and raises a lot of questions – and requires a careful walk through of what is happening here. Unsettling to most.

Is Jeff available to discuss?

F\_ REDACTED

**From:** richard.ball@ubs.com [mailto:richard.ball@ubs.com]
**Sent:** Wednesday, June 07, 2017 4:33 PM
**To:** F\_ REDACTED
**Subject:** RE: Endowment account

F\_ R\_
Greetings. We don't. I'll be in touch as soon as I return.
Thanks,

2

Richard

**From:** Fi                    REDACTED
**Sent:** Tuesday, June 06, 2017 8:01 AM
**To:** Ball, Richard
**Subject:** RE: Endowment account

Richard,

Do you have a PR sheet on the change?

Best regards,
F REDACTED


**From:** richard.ball@ubs.com [mailto:richard.ball@ubs.com]
**Sent:** Monday, June 05, 2017 4:07 PM
**To:** F  REDACTED
**Subject:** RE: Endowment account

F  REDACTED
I am traveling this week and will give you a call first thing next week.
Richard

**From:** F                    REDACTED
**Sent:** Monday, June 05, 2017 12:31 PM
**To:** Ball, Richard
**Cc:** B. .   REDACTED
**Subject:** FW: Endowment account

Richard,

Please advise on this.  Need get a clear understanding of the impact of the change with all our committee members.

Best regards,
F REDACTED


**From:** Ti              REDACTED
**Sent:** Monday, June 05, 2017 12:20 PM
**To:** B(  REDACTED   Fi REDACTED
**Subject:** Endowment account

Hello B ᴿ  and Fi ᴿ

The FDG group has left UBS which manages the endowment account.  I believe we came in through Richard Bell but Jeff Farrar is a part of FDG and has left UBS.  I received an email from one of his partners, Phil Fiore.  I wanted to let you know and I think it would be helpful if we could schedule a conference call with Richard and the endowment committee to discuss the investing as Jeff was in charge of it and are next meeting is not scheduled until July.

Best,

T REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

Additionally, on June 16, 2017, a copy of the foregoing was served via e-mail and U.S. mail, first class, postage prepaid, to counsel for the Defendants as follows:

Corey Kupfer, Esq.
Kupfer & Associates, PLLC
5 Columbus Circle, Suite 800
New York, NY 10019
ckupfer@kupferlaw.com

/s/ Stephen P. Rosenberg
Stephen P. Rosenberg (CT26601)